IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| CLARENCE DANIELS, JR., | Case No. 22-cv-00295-DKW-WRP |
| Plaintiff, | **ORDER GRANTING FOUR MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| vs. | |
| NOVANT HEALTH, INC., *et al.*, | |
| Defendants. | |

In his Second Amended Complaint ("SAC"), Plaintiff Clarence Daniels, Jr.,
proceeding *pro se*, alleges that twenty-nine Defendants committed various
constitutional rights and tort violations against him, principally stemming from
alleged kidnappings and subsequent imprisonments in medical and prison facilities
in North Carolina and Hawai‘i. Dkt. No. 54. He seeks damages. *Id.* Fourteen of
the twenty-nine named Defendants are Hawai‘i citizens, thirteen are North
Carolina citizens, one is a Colorado citizen, and one is a Florida citizen.[1] *Id.*

---

[1] The fourteen Hawai‘i Defendants are: The Queen's Health System, Dr. Nicholas Fern, Dr. Ryan Sopelsa, Dr. Esther Wong, Dr. Rodel Maulit, Dr. Leslie Rudzinski, Dr. Junju Takeshita, Dr. Kana Maeji, Dr. Chetan Patel, Dr. Wynn Wakuzawa, Dr. Jordan Winston, Dr. Kelly Nakamura, Dr. Daniel Cho, and Dr. Christopher Tokeshi. The thirteen North Carolina Defendants are: Novant Health, Inc., Mecklenburg Emergency Medical Services Agency, Amishi Shah, Sankalp Puri, Vernon Barksdale, Jacob McGrath, Nathan Carter, Michael Christo, Larson Vickery, Rajasekhar Kannali, Kaaya Malhotra, Luis Betancourt, and Marcus Boyd. The Colorado Defendant is American Medical Response. And the Florida Defendant is Publix Super Markets, Inc. Dkt. No. 54.

Before the Court are four unopposed motions to dismiss ("MTDs"). The first was filed by nine of the thirteen North Carolina-based Defendants—Novant Health, Inc., Amishi Shah, Vernon Barksdale, Jacob McGrath, Nathan Carter, Michael Christo, Larson Vickery, Rajasekhar Kannali, and Kaaya Malhotra. Dkt. No. 87. The second was filed by the Florida-based Defendant, Publix Super Markets, Inc. Dkt. No. 96. The third and fourth were filed by additional North Carolina-based Defendants Sankalp Puri and Mecklenburg Emergency Medical Services ("EMS") Agency, respectively. Dkt. Nos. 100, 105.[2]

Each of the four MTDs asserts, *inter alia*, the lack of personal jurisdiction. As explained below, because the Court agrees that it lacks personal jurisdiction over the moving out-of-state Defendants, all four MTDs are GRANTED. Further, because the Court has previously highlighted a concern regarding personal jurisdiction in this case and Daniels has had multiple opportunities to amend his Complaint accordingly, no additional amendment to remedy the deficiency is permitted. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may [] be denied for repeated failure to cure deficiencies by previous amendment."); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465

---

[2]Therefore, non-movants include the fourteen Hawaiʻi-based Defendants, two of the North Carolina Defendants—Luis Betancourt and Marcus Boyd—and the Colorado Defendant.

F.3d 946, 951 (9th Cir. 2006) (leave to amend may be denied when it is futile or otherwise produces an undue delay in the litigation).

## RELEVANT BACKGROUND

On July 7, 2022, Daniels initiated this action by filing an original Complaint against thirteen defendants—twelve from North Carolina and one from Florida—asserting violations of 18 U.S.C. § 1964 (the Racketeer Influenced and Corrupt Organizations ("RICO") Act), several provisions of the U.S. Constitution, and several tort laws.  Dkt. No. 1.  Daniels simultaneously filed an *in forma pauperis* application, Dkt. No. 3, pursuant to 28 U.S.C. § 1915, which was granted.  Dkt. No. 6.  Pursuant to the 28 U.S.C. § 1915 screening process, the Court dismissed the Complaint for lack of venue, as none of the events alleged therein occurred in the District of Hawai'i.  *Id.*

On August 11, 2022, Daniels filed a First Amended Complaint ("FAC"), Dkt. No. 7, which asserted similar claims, this time against sixteen defendants—four from Hawai'i, eleven from North Carolina, and one from Florida.  The FAC survived 28 U.S.C. § 1915 screening because Daniels changed the situs of the harms allegedly inflicted on him to add Hawai'i.  Dkt. No. 12.  The FAC was then served on the sixteen defendants.  *See id.*

On March 20, 2023, the four Hawai'i defendants named in the FAC filed a motion to dismiss, alleging, *inter alia*, lack of subject matter jurisdiction on the

basis of sovereign immunity.  Dkt. No. 45.  On May 12, 2023, the Court agreed

that the four Hawaiʻi defendants were protected by sovereign immunity, and they

were dismissed from the case.  Dkt. No. 49.  Additionally, *sua sponte*, the Court

dismissed Daniels' RICO Act claims in the FAC as against *all defendants*, holding

that Daniels had no standing to bring a criminal complaint under the RICO Act, a

federal criminal statute.  *See id.* at 4–5 (dismissing Daniels' Title 18-based claims

with prejudice for lack of standing); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619

(1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution

or nonprosecution of another.").  Finally, because none of the twelve remaining

defendants was a Hawaiʻi citizen, the Court ordered Daniels to show cause as to

why, among other things, the Court had personal jurisdiction over those remaining

defendants.  Dkt. No. 50 (Order to Show Cause ("OSC")).  Thereafter, on May 21,

2023, Daniels proposed another amended complaint, which the Court construed as

an implicit request to amend his FAC in response to the deficiencies noted in the

OSC.  Dkt. No. 53.  The Court granted the request to amend the Complaint and

discharged the OSC.  *Id.*  Daniels then filed the operative SAC, naming the current

twenty-nine Defendants, on May 26, 2023.  Dkt. No. 54.

Daniels' SAC alleges that the twenty-nine Defendants conspired to kidnap,

restrain, and transport him to various medical and prison facilities against his

consent.  *Id.*  He further claims that, during his detentions, he was attacked with

chemical weapons, forced to ingest controlled substances against his consent, and otherwise tricked and tortured in various ways.  *Id.*

Accordingly, the SAC asserts (i) a violation of several constitutional rights, including the right to the free exercise of religion under the First Amendment, the right against unreasonable searches and seizures under the Fourth Amendment, the right against cruel and unusual punishment under the Eighth Amendment, and the rights to equal protection and due process under the Fourteenth Amendment; (ii) a civil conspiracy to commit these civil rights violations; and (iii) several state law-based tort claims, including false imprisonment, battery, reckless endangerment, medical malpractice, and intentional infliction of emotional distress.  *Id.*  The SAC also re-asserts a violation of the RICO Act, a claim that is disregarded because it remains DISMISSED WITH PREJUDICE, as explained in the Court's prior Order. *See supra* at 4 (citing Dkt. No. 49 at 4–5).

Before the Court are four MTDs: (1) Dkt. No. 87, filed by nine North Carolina-based Defendants on June 12, 2023; (2) Dkt. No. 96, filed by Publix Super Markets, Inc., the Florida-based Defendant, on June 27, 2023; (3) Dkt. No. 100, filed by Dr. Sankalp Puri, a single North Carolina-based Defendant, on July 11, 2023; and (4) Dkt. No. 105, filed by Mecklenburg EMS Agency, another North Carolina-based Defendant, on July 27, 2023.  Daniels did not oppose any of the MTDs.  On July 28, 2023, the first three movants filed Reply Briefs.  Dkt. Nos.

108–110.[3]  The Court elected to decide these matters without a hearing pursuant to

LR 7.1(c), Dkt. Nos. 104, 107, and this Order follows.

## LEGAL STANDARD

A party may assert a defense based on lack of personal jurisdiction by

motion.  Fed. R. Civ. P. 12(b)(2).  "Where a defendant moves to dismiss a

complaint for lack of personal jurisdiction, the plaintiff bears the burden of

demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin

Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d

1357, 1361 (9th Cir. 1990)).  When deciding whether the plaintiff has met this

burden, "uncontroverted allegations in the complaint must be taken as true," and

any "[c]onflicts between parties over statements contained in affidavits must be

resolved in the plaintiff's favor." *Id.* (citing *Am. Tel. & Tel. Co. v. Compagnie

Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) and *Bancroft & Masters, Inc.

v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

Under Hawaiʻi state law[4] and the Due Process Clause of the Fourteenth

Amendment, a federal district court possesses personal jurisdiction over a

---

[3]The deadline for the fourth movant to file a Reply Brief is August 17, 2023, a date following the publication of this Order.  Because that Reply Brief is not necessary in light of Daniels' failure to oppose the motion, this Order is filed prior to the Reply Brief deadline.
[4]Federal courts apply the laws of personal jurisdiction of the states in which they sit. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017).  Hawaiʻi's long-arm statute, which defines the extent to which Hawaiʻi courts may exercise personal jurisdiction over individuals, is coextensive with the limits imposed on the same by constitutional due process. *See* H.R.S.

defendant where the defendant has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945). The Supreme Court has characterized two categories of personal jurisdiction within this overarching rule: general jurisdiction and specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2022)).

General (or all-purpose) jurisdiction exists where the defendant has such "continuous and systematic" contacts with the forum state that it is fair to deem the defendant "essentially at home" there. *Goodyear*, 564 U.S. at 919. A person or individual, as opposed to a corporation, is only "essentially at home" in the state of his or her domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction extends to "any and all claims" brought against the defendant there. *Goodyear*, 564 U.S. at 919.

Specific (or case-linked) jurisdiction, on the other hand, covers out-of-state defendants, but only as to those claims that "arise out of or relate to the defendant's

---

§§ 4118-6, 634-35, 634-35(a)(1); *Cowan v. First Ins. Co. of Haw.*, 608 P.2d 394, 399 (Haw. 1980).

contacts" with the forum state. *Ford*, 141 S. Ct. at 1024–25. As the Supreme

Court has explained, for specific jurisdiction to exist, the defendant:

> must take "some act by which [he or she] purposefully avails [him or her]self of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). They must show that the defendant deliberately "reached out beyond" [his or her] home—by, for example, "exploit[ting] a market" in the forum State or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

*Ford*, 141 S. Ct. at 1024–25; *see also Schwarzenegger*, 374 F.3d at 802 ("The non-

resident defendant must purposefully direct his activities or consummate some

transaction with the forum or resident thereof; or perform some act by which he

purposefully avails himself of the privilege of conducting activities in the forum,

thereby invoking the benefits and protections of its laws[.]"); *CollegeSource, Inc.*

*v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) ("In tort cases, we

typically inquire whether a defendant purposefully directs his activities at the

forum state, . . . [by] (1) commit[ting] an intentional act, (2) expressly aimed at the

forum state, (3) causing harm that the defendant knows is likely to be suffered in

the forum state.") (internal quotation marks and citation omitted). Overall, there

must be a "strong 'relationship among the defendant, the forum, and the

litigation.'" *Ford*, 141 S. Ct. at 1025 (quoting *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

8

## DISCUSSION[5]

### I.      The moving Defendants are dismissed from this case for lack of personal jurisdiction.

The moving Defendants are not subject to general jurisdiction in Hawaiʻi. The individual Defendants are domiciled in other states and therefore are not "essentially at home" here.  *See* SAC at 2–9; *Daimler*, 571 U.S. at 137.  And the entity Defendants are neither incorporated in Hawaiʻi, nor have their principal places of business here, nor otherwise maintain "continuous and systematic" contacts with Hawaiʻi such that they may be subject to general jurisdiction.  *See* SAC at 2–9; *Goodyear*, 564 U.S. at 919.

As for specific jurisdiction, Daniels has not carried his burden to show that the moving Defendants purposefully directed their activities toward this state.  As relevant here, Daniels alleges that, on October 8, 2021, he was kidnapped at a Publix Super Market in Charlotte, North Carolina, by Publix-affiliated security personnel.  SAC at 10, 28, 30.  The Publix personnel then coordinated with Mecklenburg EMS, who transported Daniels to Atrium Health Carolinas Medical Center against his consent.  *Id.*  On October 17, 2021, Daniels was transported to Novant Health Presbyterian Medical Center, again, without consent.  *Id.* at 11–12,

---

[5]For purposes of this discussion, all allegations contained in the SAC have been taken as true, and any conflicts between the parties have been resolved in Daniels' favor.  *See Schwarzenegger*, 374 F.3d at 800.  Additionally, the allegations in the *pro se* SAC have been construed liberally. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

28, 30–31.  Between October 17, 2021 and November 24, 2021, Daniels alleges

that physicians at Novant Health hospitalized him against his will, diagnosed him

with schizophrenic catatonia, and forced him to ingest the medications Lorazepam,

haloperidol, and ziprasidone.  *Id.* at 13–14, 19, 23–24, 31–36.

      Daniels does not provide any facts about what happened between November

24 and 27, 2021.

      He then alleges that he traveled to Honolulu on November 27, 2021.  The

circumstances of his travel to Honolulu are not clear, except for the following

description:

> On November 27, 2021, the Defendants conspired to deprive Clarence
> Daniels, Jr. of his liberty before he had even entered the State of
> Hawai'i.  At approximately 2:00 p.m. after departing a United
> Airlines flight at Daniel K. Inouye International Airport, Clarence
> Daniels, Jr. obtained his luggage and waited in a checkpoint line
> outside of the terminal.  Clarence Daniels, Jr. would become disabled,
> unconscious, and placed on another United Airlines plane.  (THERE
> ARE APPROXIMATELY 2 HOURS OF CLARENCE DANIELS
> JR'S LIFE UNACCOUNTED FOR.)  After exiting the plane, the
> Defendants would conspire to deprive Clarence Daniels, Jr. of his
> luggage, [and] to orchestrate interactions with airport staff.  Clarence
> Daniels, Jr. would be handcuffed, tortured, and held in cell at Daniel
> K. Inouye International Airport until November 29, 2021.

*Id.* at 19–20, 24–25, 37.  Thus, he alleges he was detained in a cell at the Honolulu

Airport from November 27–29, 2021.  *Id.* at 15, 29.  From there, he was

transported to Queen's Medical Center on November 29, 2021, where he was again

involuntarily hospitalized and forced to ingest medication.  *Id.* at 15–18, 29–30, 33,

35–36, 38–39.  He was then transported to Oʻahu Community Correctional Center on December 1, 2021, after which he remained in jail and was subjected to various forms of torture until February 15, 2022.  *Id.* at 15, 24.

Taking these allegations as true, Daniels was imprisoned in North Carolina by the North Carolina- and Florida-based Defendants until November 24, 2021.  Then, upon his release and under unknown circumstances, he flew to Hawaiʻi on November 27, 2021, and was again imprisoned, this time by the Hawaiʻi-based Defendants.  The SAC lacks any facts showing a connection between the North Carolina events and the Hawaiʻi events.  In other words, there is no allegation that the moving (North Carolina and Florida) Defendants expressly aimed any act toward this District.  *See CollegeSource*, 653 F.3d at 1077.

Although Daniels makes the murky claim that the moving Defendants "conspired" with the Hawaiʻi Defendants, there is nothing to advance this conclusory allegation from the realm of the possible to the plausible—for instance, Daniels does not indicate the circumstances of how, when, or why the Defendants communicated or conspired with one another.  *See* SAC at 26–28; *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566, 570 (2007)) (facts pleaded in a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Id.* at 678 (conclusory factual allegations that only permit the court to infer "the

11

mere possibility of misconduct" are insufficient to defeat a motion to dismiss).

Specific jurisdiction requires a "strong relationship among the [D]efendant[s], this

forum, and the litigation." *See Ford*, 141 S. Ct. at 1025 (quoting *Helicopteros*, 466

U.S. at 414) (emphasis added). Here, there appears to be *no* relationship. In sum,

the Court lacks personal jurisdiction over the moving Defendants, and they are thus

dismissed from the action.[6]

## II.     Leave to Amend

Leave to amend one's complaint should be given when "justice so requires."

Fed. R. Civ. P. 15(a)(2). However, justice does *not* so require when amendment

(1) would prejudice an opposing party, (2) is sought in bad faith, (3) would

produce an undue delay in litigation, or (4) would be futile, or (5) when there has

been repeated failure to cure a deficiency. *Abagninin*, 545 F.3d at 742;

*AmerisourceBergen Corp.*, 465 F.3d at 951.

Here, justice does not require leave to amend the SAC. Daniels has filed

three distinct complaints, each of which has increased the number of defendants in

this case, and each of which has been largely unresponsive to issues raised by this

Court.[7] Most relevant here, although the SAC was filed directly following the

---

[6]Each of the four MTDs proffers additional bases for dismissal beyond lack of personal
jurisdiction. *See* Dkt. Nos. 87, 96, 100, 105. The Court discusses only personal jurisdiction, as
that basis alone is sufficient to dispose of the motions.

[7]For instance, the SAC retains the RICO Act cause of action despite the Court's prior holding
that such a claim is not permissible and despite the absence of leave to amend. *See* Dkt. No. 49

Court's OSC as to why personal jurisdiction existed over the out-of-state

defendants, it failed to remedy that deficiency.  Therefore, Daniels has had

multiple opportunities to remedy deficiencies in his complaint and has failed to do

so.  Because further amendment would be futile and would unnecessarily delay this

litigation, in which seventeen Defendants remain, leave to amend is DENIED.  *See*

*AmerisourceBergen Corp.*, 465 F.3d at 951; *Abagninin*, 545 F.3d at 742.

## CONCLUSION

As discussed above, the four instant MTDs, Dkt. Nos. 87, 96, 100, 105, are

GRANTED for lack of personal jurisdiction over the moving Defendants.

Additionally, Count 1, premised on 18 U.S.C. § 1964, remains DISMISSED WITH

PREJUDICE as against all remaining Defendants.

IT IS SO ORDERED.

DATED: August 11, 2023 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

(dismissing Daniels' RICO Act claim with prejudice as against all defendants); SAC at 10–18
(re-asserting a RICO Act claim).